**FIRST STATE BANK OF CORPUS CHRIS-TI, a Corporation, Appellant,**

v.

**VON BOECKMANN–JONES COMPANY, a Corporation, Appellee.**

No. 11054.

Court of Civil Appeals of Texas. Austin.

March 6, 1963.

Rehearing Denied March 20, 1963.

Clark, Thomas, Harris, Denius & Winters, Mary Joe Carroll, Austin, for appellant.

Cofer & Cofer, Douglass D. Hearne, Austin, for appellee.

PHILLIPS, Justice.

This is an action based upon fraud brought by the Von Boeckmann-Jones Company of Austin, hereinafter referred to as the printing company, against the First State Bank of Corpus Christi, hereinafter referred to as the bank. The case was tried before a jury.

We will state the facts briefly as this case has been before us once on a plea of privilege involving the same question of fraud as is presented here. First State Bank of Corpus Christi v. Von Boeckmann-Jones Company, Tex.Civ.App., 359 S.W.2d 171, 1962, no writ history. In this opinion the facts and the evidence relied on by both parties were fully detailed with respect to the development of the case at this time and regarding the elements of fraud rela-

tive to the question of venue, this Court held that the three essential elements of actionable fraud were present and proved. The Court listed these elements as: (1) a false representation of a material fact, (2) reliance thereon by a person entitled to rely thereon, (3) resultant injury.

The printing company entered into a contract with a Mr. Welker in November of 1959 whereby they were to print a "1961 Oil and Gas Industries Directory." The bank was completely aware of the details of this transaction and advanced funds to Welker from time to time. Welker would bring certain signed verified orders for the directory to the bank as he acquired them and would assign them to the bank as collateral for the money advanced.

On August 19, 1960, Mr. Werner Jessen, President of the printing company wrote the bank that it was the understanding of the printing company, after talking with Welker, that the bank was holding signed bona fide orders for the Oil Directory which were sufficient to defray the printing expenses.

The bank did not reply to this letter. On September 6, 1961, Mr. Jessen, Mr. Kent Rider, Vice President and Treasurer of the printing company, Mr. Evans its secretary and Welker met in Rider's office. Rider placed a telephone call to Mr. W. S. Byrnes, Vice President of the bank in Corpus Christi.

The information conveyed and received during this telephone conversation is the crucial point of this lawsuit.

The printing company alleges that Rider was told by Byrnes that there was in excess of $36,000 in signed, approved, and accepted orders from Welker in the bank of which approximately $15,360.00 were being held by the bank to retire Welker's obligation; that the balance was being held by the bank for the printing company.

The bank denied this version of the telephone conversation and Byrnes testified that the only representation he made was that Welker had brought an unverified list of accounts to the bank which were in addition to the signed bona fide accounts actually assigned the bank.

The bank contends that the printing company had not relied on it for payment of the debt and could not have so relied after Byrnes had written a letter to Jessen on September 28, 1961, fully detailed in the above mentioned opinion, which letter referred to Jessen's letter of August 19, stated further that Byrnes had written Welker a letter on September 3, to the effect that " 'We (the bank), of course, cannot assure your publisher that the total cost of printing this directory will come out of your account first. We naturally hold assignments on the accounts for a sufficient amount to liquidate the indebtedness to us. It is apparent from the information we have in our files based on the assignments, and the list we were furnished, that you have approximately a total of $34,000.00 in order.' "

The letter to Jessen continues, "at this time we have assignments on some $18,-000.00 in orders and our files reflect a list of approximately $15,000.00 in orders which are not being held by the bank under assignment in our collateral files which we understand from Mr. Welker are ear marked for your purposes."

The letter continues, "As of this date, Mr. Welker advises us that he has orders for advertising and directories amounting to $36,000.00."

The letter to Welker of September 3, written by Byrnes and referred to in the above mentioned letter to Jessen was never seen by any of the officials of the printing company. It did state in addition to the part quoted to Jessen, that the only signed verified orders that the bank held were those specifically assigned to it as security for the loans to Welker.

The record shows that the directory was printed, bound and delivered by the printing

company to Welker and that from the assigned directory orders held by the bank it obtained sufficient funds to pay in full the indebtedness of Welker to the bank, but that of the $25,884.90 cost of printing the directory, the printing company has been paid only $2,200.00.

The bank did not have any collateral pledged to the payment of the printing company's account.

The jury found that B. S. Byrnes represented to the officers of the printing company on the occasion of the September 6, telephone conversation that the bank was holding signed, bona fide orders for the directory for the printing company's benefit; that the printing company relied on such representation; that the printing company would not have otherwise proceeded with the printing of the directory after September 6, 1960; that such representation was a material inducement to the printing company to complete the printing of the directory after September 6, 1960; that the expenses actually incurred by the printing company in printing the directory were $17,941.96; that a reasonably prudent person, in the exercise of ordinary care, acting under the same or similar circumstances as was Jessen, would not have been put upon notice by Byrnes' letter of September 28, 1960, of the falsity of the representation inquired about in the first issue submitted.

An extensive record was made in this case. All three of the officers of the printing company testified that they were present in Rider's office when he made the telephone call in question to Byrnes at the bank. In addition to hearing Rider's conversation they heard Rider's questions and observed his reactions thereto. During this conversation Rider wrote notes on a memo pad which were introduced in evidence. Among these notes was a statement "Assigned to VBJ." This was written under the figure 15,360. The officers testified that the impression they received from Byrnes was that there was $15,360 in either assigned orders or orders to be assigned and being

held for the printing company by the bank as collateral. That Mr. Byrnes never made any distinction between the quality of the orders that he was holding for the bank and the orders he was holding for the printing company. That these orders were held in the bank's collateral file along with the orders securing Welker's debt to the bank. That there were sufficient orders over and above those securing Welker's debt to the bank to pay the printing bill. That the printing company would not have proceeded further with the contract after September 6, but for such representation.

There was ample evidence to support the jury's findings. The allegations of the printing company and the findings made by the jury support the elements necessary for fraud set out in our former opinion.

The judgment of the trial court is affirmed.

Affirmed.